# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

| | |
|---|---|
| OSCAR OSVALDO ESPINOZA-GARCIA, | |
| Petitioner, | CIVIL ACTION NO.: 5:15-cv-62 |
| v. | |
| TRACY JOHNS, Warden, | |
| Respondent. | |

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Oscar Osvaldo Espinoza-Garcia ("Espinoza-Garcia"), who was previously housed at D. Ray James Correctional Facility in Folkston, Georgia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Respondent filed a Response. (Doc. 9.) Espinoza-Garcia filed a Reply, and several other pleadings. (Docs. 10, 14, 18, 19, 20, 21.) For the reasons which follow, I **RECOMMEND** that the Court **DENY** Espinoza-Garcia's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, (doc. 1), **CLOSE** this case, and **DENY** Espinoza-Garcia leave to proceed *in forma pauperis*.

## BACKGROUND

Espinoza-Garcia was convicted in the Northern District of Alabama of illegal entry after deportation in violation of 8 U.S.C. § 1326(a). (Doc. 9-2, pp. 6–7.) The Northern District of Alabama sentenced Espinoza-Garcia to 60 months' imprisonment. Id. He has a projected release date of July 13, 2018, via good conduct time release. (Doc. 9-1, p. 2.)

In his Petition, Espinoza-Garcia contends that the Bureau of Prisons ("BOP") has miscalculated his sentence. (Doc. 1.) Specifically, he contends that the BOP has not awarded him the appropriate amount of jail credit toward the service of his federal sentence. Additionally, he alleges the BOP wrongly denied his request to designate his State of Alabama facility for the service of his federal sentence, which would have allowed his federal and State sentences to run concurrently.

Respondent contends Espinoza-Garcia has received all of the credit against his federal sentence to which he is entitled. (Doc. 9, p. 3.) Respondent takes the position that 18 U.S.C. § 3585(b) and BOP Program Statement 5880.28, Sentence Computation Manual (CCA of 1984), prohibit the application of the requested jail credit Petitioner seeks because the time at issue was already applied toward the service of a state sentence. Respondent also maintains that the BOP properly computed Petitioner's federal sentence to run consecutive to his state sentence and that the BOP properly reviewed and properly denied, in the exercise of its discretion, Petitioner's request for a *nunc pro tunc* designation.

## DISCUSSION

### I. Sentence Computation

It is the duty of the United States Attorney General, acting through the BOP, to determine the amount of credit due for the time served by the defendant prior to sentencing. United States v. Alexander, 609 F.3d 1250, 1259 (11th Cir. 2010). 18 U.S.C. § 3585, which pertains to "credit for prior custody," is controlling for making credit determinations for sentences imposed under the Sentencing Reform Act of 1984. This statute provides:

> (a) Commencement of sentence. – A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

> (b) Credit of Prior Custody. – A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences —
>
>> (1) as a result of the offense for which the sentence was imposed; or
>>
>> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> *that has not been credited against another sentence*.

18 U.S.C. § 3585 (emphasis added). In determining the proper credit, a two-part analysis is helpful. First, it must be determined when the sentence commenced. A sentence "'cannot begin prior to the date it is pronounced, even if made concurrent with a sentence already being served.'" Coloma v. Holder, 445 F.3d 1282, 1284 (11th Cir. 2006) (quoting United States v. Flores, 616 F.2d 840, 841 (5th Cir. 1980)).

"Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." United States v. Ballard, 6 F.3d 1502, 1505 (11th Cir. 1993); see also 18 U.S.C. § 3584(a). It is for a federal court to decide if an offender's federal sentence will run concurrently or consecutively to any state sentence the offender may face. See United States v. Andrews, 330 F.3d 1305, 1307 n.1 (11th Cir. 2003). Additionally, "'if a defendant is in state custody and he is turned over to federal officials for federal prosecution, the state government's loss of jurisdiction is only temporary. The prisoner will be returned to state custody at the completion of the federal proceedings or the federal sentence if the federal government wishes to execute it immediately.'" Powell v. Jordan, 159 F. App'x 97, 99–100 (11th Cir. 2005) (quoting Causey v. Civiletti, 621 F.2d 691, 693 (5th Cir.1980)). "A writ of habeas corpus *ad prosequendum* is only a loan of the prisoner to another jurisdiction for criminal proceedings in the receiving jurisdiction." Civiletti, 621 F.2d at 693.

The following facts regarding Espinoza-Garcia's criminal history make the computation of his sentence less straightforward than most defendants:

- On December 19, 2009, Espinoza-Garcia was arrested and held in custody by non-federal authorities in Limestone County, Alabama, for failure to appear on the charges of 3rd Degree Burglary in Case No. CC-2009-132. This arrest placed him in the primary custody of non-federal authorities. (Doc. 9., p. 3; Doc. 9-1, p. 6.)

- On January 26, 2010, Espinoza-Garcia was indicted in the Northern District of Alabama for Illegal Reentry After Deportation. (Doc. 9-1, p. 3; Doc. 9-2, pp. 16–18.)

- On February 2, 2010, Espinoza-Garcia was borrowed from state authorities and brought into federal custody via a Federal Writ of Habeas Corpus ad Prosequendum to address his federal indictment for Illegal Reentry After Deportation. (Doc. 9-1, p. 3; Doc. 9-2, pp. 19–24.)

- On September 29, 2010, Espinoza-Garcia received his 60-month sentence from the United States District Court for the Northern District of Alabama after his conviction for Illegal Reentry After Deportation. The Northern District of Alabama's judgment was silent as to the operation of his federal sentence to any state sentence he may receive for his pending state charges. (Doc. 9-1, p. 4; Doc. 9-2, pp. 6–10.)

- On or about September 30, 2010, Espinoza-Garcia was returned to the primary custody of Alabama authorities, and the federal judgment was lodged as a detainer. (Doc. 9-1, p. 4; Doc. 9-2, pp. 22–24.)

- On May 10, 2011, Espinoza-Garcia was sentenced in the Limestone County Circuit Court, to a 10-year term of imprisonment for 3rd Degree Burglary in Case No. CC-2009-132. The state court ordered the state sentence to run concurrently to the federal

sentence, and remanded him to the Alabama Department of Corrections. (Doc. 9-1, p. 4; Doc. 9-2, pp. 25–29.)

- While in the service of his 10-year state sentence, Espinoza-Garcia also had a pending charge for Trafficking Cocaine in Madison County, Alabama. On April 17, 2012, he was sentenced to a 3-year term of imprisonment in Case No. CC-2009-3920. (Doc. 9-1, pp. 4–5; Doc. 9-2, pp. 27–33.)

- On September 29, 2014, Espinoza-Garcia satisfied his Alabama state sentences, and he was turned over to the U.S. Marshals Service to commence service of his 60-month federal sentence. At this juncture, he came into the primary custody of federal authorities. (Doc. 9-1, p. 5; Doc. 9-2, p. 35.)

The BOP conducted a sentence computation on the date Espinoza-Garcia's federal sentence commenced, September 29, 2014. As a result of this computation, the BOP awarded Espinoza-Garcia credit against his federal sentence for a total of 207 days' prior credit for dates that were not applied to the service of his state sentences. (Doc. 9-1, p. 5.) The BOP concluded that of the 1,744 days covering December 19, 2009 thru September 29, 2014, Petitioner was not awarded 207 days of credits toward the service of his Alabama state sentences. Id. The BOP determined "that the state did not award him a portion of the time he spent on the federal writ." Id. The BOP utilized the dates from October 15, 2010, through May 9, 2011, to account for the 207 day difference. (Id. at pp. 6–7.)

"A federal district court reviews for abuse of discretion the BOP's decision under § 3585 regarding commencement of a federal sentence and the grant of credit for prior custody." Paradis v. Keller, No. 1:10-CV-2354-TWT-AJB, 2011 WL 2790480, at *4 (N.D. Ga. June 13, 2011), report and recommendation adopted, No. 1:10-CV-2354-TWT, 2011 WL 2790472 (N.D.

Ga. July 14, 2011). To determine whether Espinoza-Garcia is entitled to any more credit against his federal sentence, the court must begin with the plain language of the statute itself. Harris v. Garner, 216 F.3d 970, 972 (11th Cir. 2000) (en banc) ("We begin our construction of [a statutory provision] where courts should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision."). Section 3585(b) clearly states that, in some circumstances, a defendant is entitled to credit for time served prior to sentence commencement *unless* that time has been credited against another sentence.

As noted above, Espinoza-Garcia's federal sentence commenced on September 29, 2014, the date the United States Marshals Service obtained exclusive custody of him. 18 U.S.C. § 3585(a). For the time that he was primarily in state custody before that date, Espinoza-Garcia received 1,537 days credit against his State of Alabama sentence and 207 days' prior credit against his federal sentence. Espinoza-Garcia is not entitled to any more credit against his federal sentence, as he has received every day of credit to which he is entitled. Espinoza-Garcia cannot receive credit against his federal sentence for his requested dates because, to credit Espinoza-Garcia with these dates, would be to give him "double credit", which is prohibited by statute. 18 U.S.C. § 3585(b).

The court notes that the Alabama court ordered Espinoza-Garcia's state sentences to run concurrent with his federal sentence. However, the authority to order a federal sentence to run concurrent or consecutive with any other sentence rests solely with the federal sentencing court. See Andrews, 330 F.3d at 1307 n.1; Finch v. Vaughn, 67 F.3d 909 (11th Cir. 1995) ("We specifically have held that a federal court is authorized to impose a federal sentence consecutive to a state sentence, although the state court explicitly made its sentence concurrent with the

6

federal sentence.") (citing <u>United States v. Adair</u>, 826 F.2d 1040, 1041 (11th Cir. 1987)). Because the federal court did not order the federal sentence to run concurrent with the state sentence, the sentences must run consecutively. <u>Ballard</u>, 6 F.3d at 1505 ("Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently."); <u>see also</u> 18 U.S.C. § 3584(a). Espinoza Garcia remained in state custody until he was transferred to federal custody on September 29, 2014. Therefore, his state sentence was served in state custody, and the Alabama state court's order has no influence over the operation of the federal sentence.

In his Reply, Espinoza-Garcia argues that because he had not yet been sentenced on his state charges when his federal sentence was imposed, Respondent should not be allowed to rely upon Section 3584 to determine that the sentences run consecutively. (Doc. 10, pp. 3–4.) He argues that "the [federal] judge's failure to specify concurrence in these circumstances is not reasonably interpreted as indicating an intention that the sentence be consecutive." (<u>Id.</u> at p. 4.) In support of this argument, Espinoza-Garcia cites <u>United States v. Clayton</u>, 927 F.2d 491 (9th Cir. 1991), wherein the Ninth Circuit Court of Appeals found that Section 3584 does not give a district court the authority to impose a federal sentence to run consecutively to a state sentence that has not yet been imposed. However, the United States Supreme Court has now held that a district court has authority to order that the federal sentence be consecutive to an anticipated state sentence that has not yet been imposed. <u>Setser v. United</u> States, 566 U.S. 231 (2012). Even before <u>Sester</u>, the United States Court of Appeals for the Eleventh Circuit, while recognizing a split of opinion from other circuits, including the Ninth Circuit, held that a federal court has the

authority to impose a consecutive sentence to an unimposed, future state sentence. Andrews, 330 F.3d at 1307 (citing Ballard, 6 F.3d at 1502 (11th Cir.1993)).[1]

The BOP did not make any error, much less abuse its discretion, in calculating Espinoza-Garcia's sentence. He is not entitled to any more credit against his federal sentence, and the Court should **DENY** this portion of his Petition.

## II. *Nunc Pro Tunc* **Designation**

Espinoza-Garcia also argues that the BOP erred in determining he was not entitled to *nunc pro tunc* designation of his federal sentence to run concurrently with his state sentence. As explained above, Espinoza-Garcia's federal sentence was silent as to whether it was to run consecutively to or concurrently with his state sentence, so his federal sentence was to run consecutively to his state sentence.

---

[1] Espinoza Garcia also argues that he should be given double credit for his state sentence under the limited exception to Section 3585(b)'s rule against double credit in accordance with the decisions in Kayfez v. Gasele, 993 F.2d 1288 (7th Cir. 1993) and Willis v. United States, 438 F.2d 923 (5th Cir. 1971). (Doc. 10, pp. 2–3.) Pursuant to Kayfez, the BOP will grant to a federal prisoner an amount of qualified double credit if certain conditions are present, and pursuant to Willis, the BOP will award an amount of non-federal presentence credit under certain circumstances. See, e.g., Bradley v. Rathman, No. 1:10-CV-3053-VEH-RRA, 2012 WL 3999861, at *3 (N.D. Ala. Aug. 20, 2012), report and recommendation adopted, No. 1:10-CV-3053-VEH-RRA, 2012 WL 4006334 (N.D. Ala. Sept. 10, 2012); Lemons v. Quintana, No. 08–87 Erie, 2010 WL 4388066, at *9 n.12 (W.D. Pa. October 29, 2010). The viability of Kayfez and Willis credits has been called into question following statutory amendments. See Dupree v. Warden - FCI Miami, No. 13-24413-CIV, 2014 WL 11456077, at *6 (S.D. Fla. Sept. 9, 2014) ("The so-called Willis exception has thus arguably been superseded by statute.") report and recommendation adopted sub nom. Dupree v. Miami, No. 13-24413-CIV, 2014 WL 11460907 (S.D. Fla. Sept. 30, 2014). Regardless, the Kayfez and Willis exceptions both require, among other conditions, that the federal sentence be concurrent to the state sentence. Because Espinoza Garcia's federal sentence was not imposed as concurrent to any state sentence, he does not qualify for the Kayfez or Willis exceptions. See Dupree, No. 13-24413-CIV, 2014 WL 11456077, at *7 ("More importantly, perhaps, Petitioner does not fit within the Willis exception for another reason; that is, because his state and federal sentences are not concurrent."); Hearing v. Keller, No. 1:11-CV-2659-WSD-RGV, 2011 WL 6755139, at *3 (N.D. Ga. Nov. 8, 2011), report and recommendation adopted as modified, No. 1:11-CV-2659-WSD, 2011 WL 6755199 (N.D. Ga. Dec. 22, 2011) (petitioner does not qualify for Kayfez or Willis exceptions because his federal sentence is consecutive to his state sentence).

BOP has the authority to designate the place of a prisoner's imprisonment. 18 U.S.C. § 3621(b). In exercising that authority, BOP may, in its "sound discretion" "designate a state prison as a place of federal confinement *nunc pro tunc*." Roman v. Nash, 184 F. App'x 277, 279 (3d Cir. 2006) (citing Barden v. Keohane, 921 F. 2d 476, 481 (3d Cir. 1991)). In other words, BOP can designate the state prison where a defendant was detained on his state charges as the place of imprisonment for his federal sentence, thereby effectively allowing his state and federal sentences to run concurrently. However, BOP has broad discretion in making this determination, and a defendant is not legally entitled to *nunc pro tunc* designation. Barden, 921 F.2d at 483.

BOP implements *nunc pro tunc* designations under Program Statement 5160.05, Designation of State Institution for Service of Federal Sentence. (Doc. 9-2, pp. 45–47.) This Program Statement provides an inmate with the opportunity to request a *nunc pro tunc* designation based on an inmate's request for pre-sentence credit for time spent in service of a state sentence. While the BOP must consider an inmate's request, the BOP has no obligation to grant the request "by designating a state institution retroactively as the place to serve the federal sentence." (Doc. 9-1, p. 49.) The BOP will gather and review certain information, such as the federal and state Judgments and Commitments, the state sentence data record to include jail credit, and "any other pertinent information" relating to the sentences. (Id.) Under BOP Program Statement 5160.05, the Regional Directors are delegated the authority to designate a non-federal facility for concurrent service of a federal sentence and may make such a designation "when it is consistent with the intent of the federal sentencing court or the goals of the criminal justice system." Program Statement 5160.05, p. 4 (Jan. 16, 2003), www.bop.gov/policy/progstat/5160_005.pdf, last accessed August 31, 2017.

The BOP reviewed Petitioner's nunc pro tunc designation under the factors set forth in Sectin 3621(b). (Doc. 9-2, p. 49.) Section 3621(b) provides in pertinent part as follows:

The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering:

(1)  the resources of the facility contemplated;

(2)  the nature and circumstances of the offense;

(3)  the history and characteristics of the prisoner;

(4)  any statement by the court that imposed the sentence –

   (A)  concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

   (B)  recommending a type of penal or correctional facility as appropriate; and

(5)  any pertinent policy statement issued by the Sentence Commission pursuant to section 944(a)(2) of title 28.

18 U.S.C. § 3621(b). As part of its review, the BOP contacted Petitioner's federal sentencing court. However, that court did not respond to the BOP's inquiry. (Doc. 9-1, p. 8; Doc. 9-2, pp. 51–52.)

Ultimately, the BOP denied Espinoza-Garcia's request for *nunc pro tunc* designation. (Doc. 9-2, pp. 49, 54–55.) Espinoza-Garcia was informed of that denial by letter dated April 23, 2014. (Id. at pp. 54–55.) In that letter, the he BOP explained that *nunc pro tunc* designation was not appropriate for him because: under factor (2), his federal offense was reentry after legal deportation; under factor (3), his presentence investigation report indicates that he had been convicted of "Theft by Shoplifting, Assault on a Female, Attempt 2nd Degree Sex Offense,

Burglary-1st Degree, No Driver's License, and Driving Under the Influence;" and under factor (4) the federal court had the opportunity to order that Espinoza-Garcia's federal sentence run concurrently with his state sentence, but did not. Id. Espinoza-Garcia was further informed that, Section 3585(b) prohibits credit toward his federal sentence for time spent in state custody. Id.

Respondent contends that 18 U.S.C. § 3625 precludes this Court from reviewing the BOP's decision to deny Petitioner's request for a *nunc pro tunc* designation. (Doc. 9, pp. 11–12 (citing Cook v. Wiley, 208 F.3d 1314, 1319 (11th Cir. 2000); Ward v. Booker, 202 F.3d 1249, 1254 n.5 (10th Cir. 2000); Martin v. Gerlinski, 133 F.3d 1076, 1079 (8th Cir. 1998)).) In his Reply, Espinoza-Garcia states that he is entitled to "fair treatment" on his request and that the Court has jurisdiction to review the request pursuant to 28 U.S.C. § 2241. (Doc. 10, pp. 4–6.) Whether this Court can review the BOP's *nunc pro tunc* denial appears to be an open question. Compare Dupree, No. 13-24413-CIV, 2014 WL 11456077, at *8 ("Petitioner has failed to allege any facts that would support a conclusion that the BOP abused its discretion in determining that a *nunc pro tunc* designation to the Georgia State facility would not be appropriate in Petitioner's case. Regardless, even assuming that he had, Petitioner's claim would be foreclosed by the plain language of 18 U.S.C. § 3625. . . . Federal courts thus lack jurisdiction to review BOP individualized determinations made pursuant to § 3621 and, as such, the BOP's substantive determination to deny Petitioner retroactive designation is not subject to judicial review in this case."); and Paradis, No. 1:10-CV-2354-TWT-AJB, 2011 WL 2790480, at *4 ("[I]t appears that a *nunc pro tunc* designation under § 3621 (which includes a determination under § 3585 of the effective date that the federal sentence will begin) is subject to review for abuse of discretion."). The Court need not resolve this question in this case. Even if the Court has authority to review the BOP's denial of Petitioner's request for a *nunc pro tunc* designation, Petitioner has failed to

11

show that the BOP committed any error, much less abused its discretion in denying his request. As laid out above, the BOP properly assessed Petitioner's request under the applicable statutes and policies including Program Statement 5160.05. Petitioner's arguments only show disagreement with the result of the BOP's assessment and fail to demonstrate any error or abuse of discretion in the BOP's decision making process.

Espinoza-Garcia is not entitled to his requested relief as to *nunc pro tunc* designation, and the Court should also **DENY** his Petition on this basis.

### III.     Leave to Appeal *In Forma Pauperis*

The Court should also deny Espinoza-Garcia leave to appeal *in forma pauperis*. Though Espinoza-Garcia has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Espinoza-Garcia's Petition and the related pleadings, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DENY** Espinoza-Garcia's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, (doc. 1), **CLOSE** this case, and **DENY** Espinoza-Garcia leave to proceed *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of

Court to serve a copy of this Report and Recommendation upon Espinoza-Garcia and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 31st day of August, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA